IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RONALD E. LAMBERT, JR.,

    Petitioner,

v.                                                                                Case No. 2:19-cv-00053

DONALD F. AMES, Superintendent,
Mount Olive Correctional Complex,

    Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the respondent's Motion for Summary Judgment (ECF No. 15).

### PROCEDURAL HISTORY OF PETITIONER'S CASE

**A.    The petitioner's criminal proceedings**

In January of 2002, Petitioner was indicted on two counts of kidnapping, in violation of W.Va. Code § 61-2-14a (Counts One and Two); three counts of first degree sexual assault, in violation of W.Va. Code § 61-8B-3 (Counts Three-Five); and one count of first degree murder, in violation of W.Va. Code § 61-2-1 (Count Six). *State v. Lambert*, No. 05-F-22. (ECF No. 13, Ex. 2). Throughout his criminal proceedings in the Circuit Court, Petitioner was represented by Boone County Public Defender Robert White ("White"), with the assistance of Michael Blevins ("Blevins").

In April of 2002, Petitioner filed complaints with the Office of Disciplinary Counsel ("ODC") and the Supreme Court of Appeals of West Virginia ("SCAWV") concerning his counsel's performance. Petitioner also filed a motion to dismiss White as his counsel in the Circuit Court and White filed his own motion to withdraw. (ECF No. 18 at 5 and Attach. 1). However, the complaints against White and the motions to permit his withdrawal as counsel were ultimately denied and White and Blevins remained as Petitioner's counsel throughout his Circuit Court criminal proceedings.

On June 19, 2002, White requested psychiatric and psychological examinations of Petitioner based on a "long history of mental health problems" and the possibility that Petitioner suffered from an alleged "mental disease or defect that renders him either incompetent to stand trial and/or not criminally responsible." (ECF No. 15, Ex. 1 at 1). On September 13, 2002, the Circuit Court granted Petitioner's uncontested motion. (*Id.*, Ex. 2). On March 6, 2003, the competency examination having not yet been conducted, the Circuit Court ordered that Ralph S. Smith, Jr., M.D., and the staff at Charleston Psychiatric Group, Inc. conduct all necessary psychiatric and psychological evaluations. (*Id.*, Ex. 3). The evaluation was completed on March 24, 2003. (*Id.*, Ex. 4).

On April 3, 2003, prior to the Circuit Court receiving the written report on the competency evaluation, Petitioner pled guilty to one count of kidnapping (Count Two) and one count of first degree murder (Count Six). According to his plea agreement, Petitioner would be sentenced to life with mercy on both counts and the remaining counts of the indictment would be dismissed. (ECF Nos. 13, Exs. 3 and 4).

On April 8, 2003, a written report concerning Petitioner's competency evaluation was submitted to the Circuit Court. (ECF No. 15, Ex. 4). However, the 15-page report erroneously contained several pages concerning the evaluation of another "Ronald

Lambert." (*Id.*) Subsequently, the Charleston Psychiatric Group evaluators submitted a "Memo to Record" explaining the errors in the report and confirming that the conclusions made in the report were drawn from the actual evaluation of Petitioner. (*Id.*, Ex. 5).

On December 3, 2003, the Circuit Court sentenced Petitioner to two consecutive sentences of life with mercy. (ECF No. 13, Exs. 8 and 9). Petitioner did not appeal his conviction or sentence. On November 15, 2004, Petitioner filed a Motion for Correction of Sentence pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure. (*Id.*, Ex. 10). On May 25, 2006, the Circuit Court denied Petitioner's Rule 35 motion as untimely filed. (*Id.*, Ex. 11.)

### B. Petitioner's state habeas proceedings.

On April 6, 2006, Petitioner filed a habeas corpus petition in the Circuit Court of Boone County. (*Id.*, Ex. 13). Attorney Benjamin M. Mishoe was appointed to represent Petitioner. On February 28, 2007, Petitioner, by counsel, filed an amended petition alleging a violation of his due process rights with respect to the evaluation and determination of his mental competency and several claims of ineffective assistance of counsel. (ECF No. 13, Ex. 14). On November 3, 2009 and April 14, 2011, the Circuit Court conducted evidentiary hearings in which testimony from Petitioner, defense counsel White, and psychologist Rosemary Smith were presented. (*Id.*, Exs. 15 and 16). Oral argument was subsequently held on June 14, 2016. (*Id.*, Ex. 17). Testimony from those proceedings will be discussed as necessary *infra*.

On September 18, 2017, the Circuit Court denied Petitioner's petition. (*Id.*, Ex. 18). Petitioner appealed the denial of his habeas petition to the Supreme Court of Appeals of West Virginia (the "SCAWV"), which affirmed the Circuit Court's decision on November 16, 2018. (*Id.*, Ex. 23).

### C. Petitioner's instant habeas corpus petition.

On January 17, 2019, Petitioner filed the instant petition under 28 U.S.C. § 2254, alleging two grounds for relief:

> **Ground One**: Petitioner's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the Court failed to afford the Petitioner substantive and procedural due process in evaluating and determining his mental competency.
>
> **Ground Two**: Petitioner's due process rights under the Sixth Amendment to the United States Constitution were violated when his attorney provided ineffective assistance of counsel.
>
> (I) Trial counsel failed to prepare an adequate defense by submitting DNA evidence to the defense expert only six days before trial.
>
> (II) Trial counsel forgot that a psychological evaluation was ordered by the Court and necessary.
>
> (III) Trial counsel failed to request a competency hearing.
>
> (IV) Trial counsel failed to realize that the psychiatric report submitted after Petitioner entered a plea contained erroneous findings.

(ECF No. 2 at 4-6).

The undersigned initially ordered limited briefing on the timeliness of the federal petition. (ECF No. 6). After Respondent conceded timeliness (ECF No. 13), the undersigned ordered additional briefing on the merits of Petitioner's claims for relief (ECF No. 14).

On March 9, 2020, Respondent filed a Motion for Summary Judgment with numerous exhibits (ECF No. 15) and a Memorandum of Law in support thereof (ECF No. 16). On May 26, 2020, Petitioner filed Objections to the Motion for Summary Judgment with additional exhibits (ECF No. 18) (hereinafter "Petitioner's Response"). Respondent did not file a reply. This matter is ripe for adjudication.

4

**SUMMARY OF RELEVANT EVIDENCE**

On November 23, 2001, Petitioner picked up Toni and Melissa Sergeant, who were acquaintances of his, on Mud River in Boone County, West Virginia, and offered to give them a ride to Ranger, in Lincoln County, West Virginia. (ECF No. 13, Ex. 5 at 25-35).[1] On the way, Petitioner stopped at Magic Mart and bought duct tape. (*Id.*)  Petitioner subsequently pulled over at the intersection of Lower Hewett Creek Road and U.S. 119, near Julian, in Boone County, where he bound the women with duct tape, while brandishing a knife, and raped them. (ECF No. 13, Ex. 5 at 25-30).

According to Petitioner, he had straight-lined cocaine earlier in the evening, which allegedly caused him to black out. (ECF No. 13, Ex. 5 at 27). When he came out of the alleged blackout, he asked the women what had happened. He cut them loose after they told him what he had done, and he told them he should be in prison if he had performed those acts. (*Id.* at 30). The women fled while Petitioner stayed in his vehicle. (*Id.*) Toni Sergeant tried to wave down the first car that approached them but, as she stepped out in front of the vehicle, she was hit and killed. (*Id.*) Her autopsy report demonstrated vaginal bruising consistent with forcible sex and fragments of duct tape were found on her clothing. (*Id.* at 30-31). DNA analysis from the West Virginia State Police Laboratory also revealed the presence of Petitioner's sperm in Melissa Sergeant's underwear. (*Id.* at 31).

At Petitioner's plea hearing on April 3, 2003, the Circuit Court ensured that Petitioner understood the nature of the proceedings, the charges against him and the details of his plea agreement; that he had reviewed the plea agreement with counsel and

---

[1] When citing to transcripts found in the various exhibits, the undersigned will use the CM/ECF pagination found at the top of each page of the exhibit as docketed on the docket sheet.

was satisfied with counsel's assistance; that he understood the rights he was waiving by pleading guilty and the possible sentences he faced; and the court obtained a statement of facts supporting the guilty pleas. (ECF No. 13, Ex. 5). The court found that that Petitioner's guilty pleas were knowing and voluntary, accepted his guilty pleas, and dismissed the remaining charges against him. (*Id*. at 37-38).

The Circuit Court subsequently received Petitioner's written competency evaluation, which concluded that he was competent to stand trial and was criminally responsible at the time of his crimes. (ECF No. 15, Ex. 4). Although the written report erroneously contained five pages pertaining to another "Ronald Lambert," the testimony of psychologist Rosemary Smith during the habeas proceedings indicated that the conclusions drawn about Petitioner's competency were based upon the actual evaluation of Petitioner, as further confirmed in a "Memo to Record" completed on December 16, 2009. (ECF No. 13, Ex. 16 at 13-15, 20; ECF No. 15, Ex. 5).

## **APPLICABLE STATUTES AND CASE LAW**

### A.     **Habeas review under 28 U.S.C. § 2254**

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

### B. Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.). Summary judgment is required where the non-moving party fails to make a sufficient showing of an essential element of a claim. *Id.*

7

## ANALYSIS

### A.   Petitioner's due process claim.

Petitioner first contends that he was denied the right to substantive and procedural due process of law because the Circuit Court failed to review the competency evaluation report and hold a competency hearing before accepting his guilty plea, after multiple orders finding such an evaluation necessary. (ECF No. 2 at 4). He further contends that the Circuit Court erred in relying upon the erroneous competency evaluation to conclude that Petitioner was not entitled to habeas relief. (*Id.*)

"The Due Process Clause of the Fourteenth Amendment[2] prohibits states from trying and convicting mentally incompetent defendants." *Burket v. Angelone*, 208 F.3d 172, 191 (4th Cir. 2000). It is well established that "a criminal defendant must be competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992); *see also Bell v. Evatt*, 72 F.3d 421, 431 (4th Cir. 1995). At the time of trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *United States v. Taylor*, 437 F.2d 371, 375 (4th Cir. 1971) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). A defendant has both procedural and substantive due process rights to not be tried while mentally incompetent. *Burket*, 208 F.3d at 191.

A similar standard applies to competency to enter a guilty plea. *See Godinez v. Moran*, 509 U.S. 389, 399 (1993) ("If the *Dusky* standard is adequate for defendants who

---

[2] Although Petitioner also cites to the due process clause of the Fifth Amendment, that provision is generally limited to protections against the conduct of federal rather than state officials. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Accordingly, the undersigned will address this claim only under the Fourteenth Amendment.

plead not guilty, it is necessarily adequate for those who plead guilty."). Prior to accepting a guilty plea, the court must determine that the defendant is competent and that his plea is knowing and voluntary. *Id.* at 400. A defendant is competent to plead guilty if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396. "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Burket*, 208 F.3d at 192.

Petitioner does not claim that he was incompetent at the time he entered his guilty plea. Instead, he asserts that the procedures used to determine his competency were inadequate, largely because he was not granted a competency hearing. However, the need for a competency hearing arises only after the trial court is presented with evidence sufficient to prompt good faith doubt regarding competency. *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966); *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *State v. Sanders*, 549 S.E.2d 40, 50 (2001). As noted by Respondent, to prevail on a procedural due process claim, Petitioner "must establish that the trial court ignored facts raising a 'bona fide doubt' regarding [his] competency. . . ." *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003).

Respondent contends that "Petitioner failed to present any evidence indicating any doubt as to his mental capacity for which the Circuit Court failed to consider" and, thus, "there was no need to conduct a competency hearing based on Petitioner's engagement with the court and counsel at the plea hearing." (ECF No. 16 at 11). Petitioner, on the other hand, asserts that the Circuit Court had to have some "bona fide doubt" about his competency or else the court would not have entered multiple orders requiring his

9

evaluation. (ECF No. 18 at 11). Petitioner further argues that a Rule 11 plea hearing cannot serve as a substitute for a preliminary finding of competency and a competency hearing, as required by W. Va. Code § 27-6A-3(a), and an ultimate competency finding by a preponderance of the evidence, as required by W. Va. Code § 27-6A-3(c). Because these specific proceedings and findings did not occur, Petitioner contends that his rights to procedural due process were violated. (*Id.* at 13-14).

The state habeas courts found that there was no evidence that Petitioner was suffering from a mental disorder or defect that would have left his competency in doubt. At the omnibus evidentiary hearing, defense counsel White testified that the competency evaluation was requested in part because Petitioner had previously suffered a serious head injury. (ECF No. 13, Ex. 15 at 24, 32). However, White further stated that he always believed Petitioner was competent. (*Id.* at 24). He testified that Petitioner seemed "to understand the situation that he was in; the nature of the allegations against him. He seemed to understand how the court system worked. He was, I thought, able to aid his attorney in and about the defense of his case." (*Id.*) White stated he would "have been surprised if the report came back finding [Petitioner] incompetent." (*Id.*) White further testified that Petitioner wanted to enter into a plea agreement and plead guilty to ensure that he received mercy. (*Id.* at 14). Furthermore, despite the errors in the competency report, psychologist Rosemary Smith clarified that the findings concerning Petitioner's competence was based upon the information obtained from Petitioner during his evaluation. Thus, the state courts found that there was no basis for a substantive due process claim.

Although the Circuit Court did not make a specific finding that Petitioner was competent, during the plea colloquy, the court ensured that Petitioner understood the

nature of the proceedings and the charges against him, the details of the plea agreement, which had been reviewed with counsel, the rights he was waiving by pleading guilty, the possible sentences he faced, and the factual basis for his guilty pleas. (ECF No. 13, Ex. 5, *passim*). Thus, the Circuit Court found that Petitioner's guilty plea was knowing and voluntary. (*Id*. at 36-37). It stands to reason that had the Circuit Court had any "bona fide doubt" as to Petitioner's competency at the time of his plea hearing, it would not have made those findings and accepted his guilty pleas.

While the prosecutor acknowledged that the competency evaluation report had not yet been received at the time of the plea hearing, he stated that they "had every anticipation that [Petitioner] would be found competent." (*Id*. at 36). Both the prosecutor and White acknowledged that it was not unusual for a criminal defendant who had requested a psychological evaluation to decide to plead guilty before a report came back and those procedures were completed. (ECF No. 13, Ex. 15 at 47, 61).

Ultimately, the competency evaluation failed to disclose any evidence that would place Petitioner's competency or criminal responsibility in doubt. Therefore, there was no basis to require a competency hearing. Nonetheless, even if the failure to hold a competency hearing and make a specific finding of competency by a preponderance of the evidence as provided for in the state statute in effect at the time (W. Va. Code § 27-6A-1(d)[3], it would appear that such failures were harmless error and that Petitioner cannot demonstrate any actual prejudice therefrom.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief were neither

---

[3] The statute was amended in 2007 and the related provisions are currently found in W. Va. Code § 27-6A-3.

contrary to nor an unreasonable application of clearly-established federal law or an unreasonable determination of the facts based upon the evidence presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground One of Petitioner's § 2254 petition.

### B. Petitioner's ineffective assistance of counsel claims.

Petitioner also asserts that his trial counsel provided ineffective assistance of counsel by failing to ensure that his court-ordered competency evaluation occurred in a timely manner, failing to request a competency hearing, and failing to object to errors contained in the competency evaluation report, which was submitted to the court after he pled guilty. Petitioner further asserts that his counsel did not submit DNA evidence to his expert witness in a timely manner and was otherwise inadequately prepared for his trial. He suggests that his counsel's conduct compelled him to decide to plead guilty before his trial. Specifically, his petition states:

> The record of the Petitioner's case aptly demonstrates that the inadequate representation he received began almost immediately from the inception of the case and ended when Petitioner pled guilty out of sheer frustration and hopelessness. The Petitioner made his first formal complaint regarding his attorney's inadequate performance in April of 2002 which continued until February of 2003.
>
> The Petitioner's trial on five very serious charges was to begin on February 26, 2003, and there is ample evidence in the record to support the statement that Petitioner's counsel had don[e] next to nothing in order to defend his client or even prepare for the trial. Despite the Petitioner's complaints regarding ineffective assistance of counsel from April 2002 to February of 2003, the Court required him to go forward with appointed counsel. Just five weeks later, without the DNA being independently tested and the psychological evaluation ordered by the Court being completed, somehow Petitioner was permitted to enter a guilty plea to two capital offenses carrying life sentences.

12

> The record of the case strongly shows that Petitioner largely pled guilty out of a feeling of hopelessness with his attorney's representation. However, Petitioner's lack of adequate representation followed him even after he pled guilty when his lawyer failed to request a competency hearing and/or recognize that the competency evaluation report filed with the Court did not even pertain to Petitioner. His lawyer did not catch the error and allowed the Court to sentence Petitioner on a competency evaluation based on tests and observations of another Ronald Lambert, not Petitioner.

(ECF No. 2 at 6-7).

In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and the burden is on the petitioner to show prejudice. *Strickland*, 466 U.S. at 689; *see also Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983). Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. Additionally, a petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. *Id*. at 693.

13

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court acknowledged that the Sixth Amendment right to the effective assistance of counsel extends to the guilty plea process and plea bargaining and should be analyzed using the *Strickland* standard. *See also Lafler v. Cooper*, 566 U.S. 156 (2012) (deficient advice to reject plea offer and go to trial violates Sixth Amendment). The *Hill* Court addressed the voluntariness of a guilty plea and held that "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" 474 U.S. at 56 (quoting *McMann v. Richardson*, 387 U.S. 759, 771 (1970)).

Thus, "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'" *Id*. at 56-57. Furthermore, with respect to the *Strickland* prejudice prong, the *Hill* Court found that, to demonstrate prejudice from counsel's performance in the plea bargaining process, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial." *Id*. at 59. The undersigned will address Petitioner's claims of ineffective assistance of counsel using these standards.

> 1. *Failure to timely submit DNA test results to defense expert and adequately prepare a defense*

Respondent's motion for summary judgment first addresses Petitioner's claim that trial counsel failed to adequately prepare for trial. Petitioner claims that counsel failed to prepare an adequate defense by submitting the DNA evidence to his own expert until six days prior to his trial date. Consequently, Petitioner contends that he felt compelled to plead guilty in lieu of going to trial "out of sheet hopelessness and frustration." (ECF No.

14

2 at 6). Respondent, on the other hand, contends that Petitioner chose to plead guilty because the evidence against him was overwhelming and his best hope was to receive life sentences with mercy through his guilty plea. Thus, Respondent contends that Petitioner cannot demonstrate prejudice from his counsel's conduct.

In his response to the motion for summary judgment, Petitioner concedes that he cannot meet the prejudice prong with respect to his counsel's failure to submit the DNA evidence to his own expert until six days before trial. Nonetheless, he asserts that such conduct should support a finding that he was "so disenfranchised with Counsel's representation that he pled guilty in large part out of sheer frustration and desperation." (ECF No. 21-22).

The undersigned agrees that Petitioner cannot sufficiently demonstrate prejudice based upon his counsel's conduct surrounding trial preparation and Petitioner's decision to plead guilty. As aptly asserted by Respondent, there was significant evidence to support Petitioner's guilt. Specifically, Petitioner's DNA was found in sperm located in one of the victim's underwear, which corroborated the sexual assault charges. Additionally, Petitioner's own statements to law enforcement contained admissions supporting his guilt. Moreover, there was a significant risk that Petitioner would have received life without mercy sentences had he been convicted of the kidnapping and murder offenses at trial. Thus, it was in his best interest to plead guilty and ensure the opportunity to receive mercy. Furthermore, by pleading guilty, he avoided his conviction on the sexual assault charges and being labeled a sex offender.

A review of his guilty plea hearing transcript demonstrates that Petitioner was adequately advised of the consequences of his guilty plea and the rights he was giving up and the Circuit Court sufficiently established a factual basis for the guilty plea and that he

understood the proceedings and the results thereof. There is no evidence to suggest that Petitioner's prior head injury, mental health history, or medications affected his ability to comprehend the proceedings against him or that he was not competent to enter his guilty pleas. Thus, his guilty pleas were knowing and voluntary and, beyond his own assertions in hindsight, there is no evidence to demonstrate that he would have otherwise proceeded to trial. He further acknowledged that he was satisfied with his counsel's assistance. Petitioner must be held to the representations he made during the plea colloquy. *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) ("absent clear and convincing evidence to the contrary," defendant is bound by statements made under oath at Rule 11 hearing).

Petitioner has not sufficiently alleged or demonstrated that, but for counsel's conduct, he would not have pled guilty and would have elected to go to trial. Therefore, he cannot meet the high burden of establishing prejudice from his counsel's conduct surrounding trial preparation and his decision to plead guilty. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that that the state courts' decisions denying habeas corpus relief were neither contrary to nor an unreasonable application of clearly-established federal law or an unreasonable determination of the facts based upon the evidence presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's § 2254 petition as it relates to this claim for relief.

    2.  *Conduct surrounding competency evaluation*

The undersigned has previously found that Petitioner did not suffer prejudice from the failure to ensure that his competency evaluation occurred sooner or the fact that no

competency hearing was conducted before or after he pled guilty, as there was no evidence to suggest that he was actually incompetent. Consequently, he likewise cannot demonstrate the prejudice prong of the *Strickland* standard necessary to succeed on a claim of ineffective assistance of counsel. As Respondent asserts:

> [T]he State represented that the competency evaluation was requested as a precaution and to explore possible defenses as trial counsel had no reason to question Petitioner's competency. This statement was unrefuted by either Petitioner or his trial counsel. At the evidentiary hearing, trial counsel testified that the evaluation was requested in part because he suffered a serious head injury in the past, but Petitioner always seemed "to understand the situation that he was in; the nature of the allegations against him. He seemed to understand how the court system worked. He was, I thought, able to aid his attorney in and about the defense of his case." (ECF No. 13, Ex. 15 at 23, 31.) Counsel stated he would "have been surprised if the report came back finding him incompetent." (Id.) Trial counsel further testified that Petitioner wanted to plead to ensure he received mercy. (Id. at 13.)

(ECF No. 16 at 16). Respondent further argues that, notwithstanding the flaws in the written report, Petitioner's competency evaluation established that he was competent to stand trial (and by virtue thereof, to enter a guilty plea) and was criminally responsible for his actions. (*Id.* at 17).

Petitioner's response to the motion for summary judgment continues to dispute the finding that he was criminally responsible, asserting that he was too intoxicated to form the requisite intent to commit his crimes of conviction, and further asserts that his prior brain injury and history of mental health issues were significant enough to create doubt concerning his competency. (ECF No. 18 at 23-26). Thus, he contends that there is sufficient evidence to establish the prejudice prong of the *Strickland* test based upon his counsel's failure to properly pursue the competency issue.

The Circuit Court found that counsel's representation of Petitioner was reasonable and adequate. (ECF No. 13, Ex. 18 at 22). The court further found as follows:

17

> Assuming this Court found his representation ineffective for not having a written report or requesting a competency hearing prior to the plea, there has been no evidence or indication presented by Mr. Lambert that if the Court had received the written report and held a competency hearing prior to the plea that he would not have entered into the plea agreement; thus, the result of the proceedings would not have been any different. Therefore, based upon the above, this Court FINDS that Mr. Lambert received effective assistance of counsel.

(*Id.*) The Supreme Court affirmed that decision, finding that Petitioner's argument concerning deficient performance was "clearly inadequate" and that Petitioner failed to present any argument or evidence of prejudice therefrom. (ECF No. 13, Ex. 23 at 6).

The undersigned proposes that the presiding District Judge **FIND** that that the state courts' decisions denying habeas corpus relief were neither contrary to nor an unreasonable application of clearly-established federal law or an unreasonable determination of the facts based upon the evidence presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's § 2254 petition as it relates to this claim for relief.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (ECF No. 15), **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 2), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit it to counsel of record.

December 4, 2020

Dwane L. Tinsley
United States Magistrate Judge